People v Allen (2023 NY Slip Op 00496)

People v Allen

2023 NY Slip Op 00496

Decided on February 02, 2023

Appellate Division, First Department

RENWICK, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 02, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Cynthia S. Kern Tanya R. Kennedy Manuel Mendez John R. Higgitt

Index No. 1178/16 2604/16 Appeal No. 16179 Case No. 2019-2895 

[*1]The People of the State of New York, Respondent,
v
Corey Allen, Defendant-Appellant.

Defendant appeals from the judgment of the Supreme Court, New York County (Curtis J. Farber, J.), rendered January 31, 2019, convicting him, upon his plea of guilty, of criminal possession of a weapon in the third degree and failure to verify address information, and imposing sentence.

Robert S. Dean, Center for Appellate Litigation, New York (Matthew W. Christiana of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Meghan McLoughlin and Alan Gadlin of counsel), for respondent.

RENWICK, J.

This case presents the question of whether Correction Law § 168-f(3), which is part of the Sex Offender Registration Act (SORA, Correction Law art 6—C), violates due process as applied to defendant. Correction Law § 168-f(3) requires a level three sex offender to verify his or her address with the appropriate authorities every 90 days.[FN1] Defendant, an offender convicted of violating these requirements, contends Correction Law § 168-f(3) is unconstitutional on numerous grounds, including that the provision's change of address registration requirements are unconstitutionally vague in their application to him as a homeless sex offender without a home address. For the reasons explained below, we agree that Correction Law § 168-f(3) is void for vagueness when applied to one who is homeless without an address, thereby depriving defendant of due process under the New York and United States Constitutions (see US Const Amends V, XIV; NY Const, art I, § 6).
Background
The Underlying Crimes and Defendant's Sex Offender Status
Defendant was charged by Indictment Number 1178/16 with criminal possession of a weapon in the third degree and menacing in the second degree in connection with an incident on February 1, 2016, when he threatened another person with a knife inside a McDonald's in Manhattan.
By Indictment Number 2604/16, defendant, a risk level three sex offender, was charged with one count of failure to verify his address information every 90 days (Correction Law § 168-t) based on his failure to personally verify his address on or about January 21, 2016, as required by Correction Law § 168-f(3). Defendant's registration requirement was based on his March 26, 2002 conviction for first degree sexual abuse arising from his sexual contact with a minor less than 11 years old; he was adjudicated a risk level three sex offender.
Arraignment
Defendant was arraigned on the failure to verify charge on June 30, 2016. Both counsel and defendant provided context to the underlying incident. Counsel informed the court that defendant had a "meritorious defense" in that defendant was and had been homeless, and therefore, "ha[d] no address [to verify]." Defendant corroborated counsel's statements, pleading that he had been "homeless living in the street," "ha[d] absolutely nothing," and "c[ouldn't] get a job" or "find a place to live." Despite this, defendant informed the court of his strenuous efforts to comply with his reporting requirements [*2]under SORA; he would walk long distances to report to 100 Centre Street, but he would be instructed to either come back when he had an address or continue to check in every 90 days.
In response, the court informed defendant, "[i]f you were staying in a shelter, you could have given that as an address. You chose to live on the street . . . that's your choice under the circumstances." In an attempt to provide context to his experiences living in the city shelter system, defendant clarified that he did stay in a shelter temporarily, but that he was subjected to dangerous conditions and wanted to remove himself for his own personal safety. The homeless shelters, defendant noted, are dangerous places: people have been "killed" and "stabbed" there. The court then interrupted defendant and set bail.
Plea and Sentencing
On November 29, 2018, defendant pleaded guilty to third degree criminal possession of a weapon under Penal Law § 265.02(1), in full satisfaction of Indictment Number 1178/16, and to one count of failure to verify an address every 90 days under Correction Law § 168-f(3), in satisfaction of Indictment Number 2604/16. Defendant entered into the plea with the understanding that he would receive two to four years' incarceration on the weapons possession count and one to three years' incarceration on the failure to verify count, each to run concurrently. On January 31, 2019, the court imposed the promised concurrent sentences.
Prior Appellate Proceeding
In a prior proceeding before this Court on this appeal, we found that "[d]efendant's challenges to Correction Law § 168—f(3) as unconstitutionally vague and unconstitutional as applied to his situation are unpreserved for our review" (People v Allen, 206 AD3d 539, 540 [1st Dept 2022]). However, we decided to "exercise our power to review those challenges as a matter of discretion in the interest of justice [pursuant to CPL 470.15 (6)(a)]"(id.). Accordingly, we held the appeal in abeyance and "directed [defendant] to present to this Court proof of service on the Attorney General of the State of New York of the pendency of this appeal and the fact that the constitutionality of Correction Law § 168—f(3) has been brought into question (see Executive Law § 71[1]; People v Montane, 46 AD2d 617 [1st Dept 1974]" (id.). We granted " [t]he Attorney General . . . permission to appear in this appeal" (id.). The Attorney General acknowledged service but declined to intervene.[FN2]
Discussion
As indicated, defendant has raised a variety of claims on appeal. Defendant, however, primarily argues that Correction Law § 168-f(3) is unconstitutionally vague as applied to him. Our resolution of that issue is dispositive. Therefore, we do not address his other arguments.
Under the Due Process Clause of the Fourteenth Amendment, a statute is invalidated "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits" (Giaccio v Pennsylvania, 382 US 399, 402 [1966]). [*3]In addressing vagueness challenges, courts have developed a two-part test. The first part essentially restates the classical notice doctrine: To ensure that no person is punished for conduct not reasonably understood to be prohibited, the court must determine whether the statute in question is "sufficiently definite 'to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute'" (People v Stuart, 100 NY2d 412, 420 [2003], quoting People v Nelson, 69 NY2d 302, 307 [1987]; see also People v Foley, 94 NY2d 668, 681 [2000], cert denied 531 US 875 [2000]). Second, the court must determine whether the enactment provides officials with clear standards for enforcement (see Nelson, 69 NY2d at 307; Kolender v Lawson, 461 US 352, 357 [1983]). "This requirement is closely related to the first. If a statute is so vague that a potential offender cannot tell what conduct is against the law, neither can a police officer" (People v Stuart, 100 NY2d at 420-421). A vague statute impermissibly delegates basic policy determinations to the police  and eventually to judges and juries  "for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application" (Grayned v City of Rockford, 408 US 104, 108—109 [1972]; see also Nelson, 69 NY2d at 307). "Put differently, if a criminal statute is impermissibly vague, the police will be guided not by clear language but by whim. The use of precise language will ensure that both requirements are met" (People v Stuart, 100 NY2d at 421).
"[A] party seeking to nullify a statute as unconstitutional must overcome the presumption of constitutionality that favors legislative enactments" and must demonstrate its unconstitutionality beyond a reasonable doubt (People v Tichenor, 89 NY2d 769, 773 [1997], cert denied 522 US 918 [1997]; People v Pagnotta, 25 NY2d 333, 337-338 [1969]). "[A]n as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case" (People v Stuart, 100 NY2d at 421).
Since this case must be decided on its facts, the question is whether the reporting requirements of Correction Law § 168-f(3) provided sufficient notice to defendant of what conduct was mandated by the statute when he left his previous residence address, a homeless shelter, but possessed no new permanent or temporary residence with an address. According to its plain language, Correction Law § 168-f(3) mandates that offenders register a change of residence by providing a specific new "address." The statute, however, contains no objective standard or guidelines that would put homeless sex offenders without an address on notice of what conduct is required of them. Under these circumstances, such transient offenders can only guess at what is meant by the requirement that they register their new "address." Similarly, the change of address reporting requirement fails to provide [*4]even minimal guidelines for the registering authorities in these regards, thus encouraging arbitrary enforcement.
The exchange between defendant and the arraignment court typifies this lack of clarity with respect to the meaning of the word "address." The arraignment court responded to defendant's protestation of homelessness by suggesting that defendant move to a shelter and provide the shelter as his address, implying that the arraignment court understood an "address" to require a physical location along with an accompanying address, thus providing no notice or guidance to homeless or transient defendants, like defendant, who leave shelters out of safety concerns.
The People, however, argue that the undefined term "address" under Correction Law § 168-f(3) should be given the most natural sense of the term, denoting the "physical location where [a homeless person] lives." However, we are not convinced that even this construction would resolve all ambiguities involved in applying the change of address reporting requirement of Correction Law §168-f(3) to homeless sex offenders. Individuals dealing with homelessness face numerous obstacles in metropolitan areas like New York City. Such a transient sex offender without a permanent or temporary residence may occupy many locations, on a more or less regular basis, during the course of a day, week or month. To exacerbate matters, they often occupy different locations for sleeping than for spending the rest of the day. Correction Law § 168-f(3) provides no hint as to which of these multiple locations the homeless sex offender must provide to the registering authorities.
Significantly, the Department of Corrections and Community Supervision (DOCCS) does not appear to consider homelessness as included in the definition of the word "address." In fact, the document that DOCCS gives to sex offender releasees to apprise them of their registration responsibilities instructs them to verify their "home address" every 90 days if they are a level three offender (see Notice Of Duties As A Sex Offender In Accordance With New York State Correction Law Article 6-C (Sor Act), available at: https: doccs.ny.gov/system/files/documents/2019/12/frm3012c.pdf [last accessed on January 20, 2023]). Thus, as expressed by DOCCS and the arraignment court, and contrary to the People's perspective and to common sense, the common understanding of "address" is that it connotes a physical location of some kind with an accompanying address, and not a patch of concrete on the street.
The cases relied on by the People are either distinguishable or otherwise not binding on this Court. For example, People v Lanham (177 AD3d 637, 638 [2d Dept 2019]) involved a change of address from Nassau County to Suffolk County. People v Stedge (135 AD3d 1170 [3d Dept 2016]) and People v Kennedy (67 Misc 3d 127[A], 2020 NY Slip Op 50375[u] [App Term, 1st Dept 2020], lv denied 35 NY3d 1027 [2020]) similarly found that the defendant's argument was unpreserved [*5]and thus both courts rejected the argument as an alternative holding, without exploring the merits.
Accordingly, we find that the change of address registration requirement of Correction Law § 168-f(3) is too vague to be enforced against defendant here and is, therefore, unconstitutional under the due process clauses of the New York and United States Constitutions. To be clear, we are by no means holding that all homeless sex offenders are exempt from the statute's reporting requirements. Our decision renders unconstitutional the address registration requirement as applied to homeless sex offenders who, like defendant here, possess no address for their residence. It does not exempt homeless sex offenders who are able to provide an address such as a shelter at which they are staying.
Of course, like many other jurisdictions (see e.g. Alabama Code 1975 § 15-20A-12 [providing instructions for homeless sex offenders]; California Penal Code § 290.011[a], [d] [providing that transient offenders must register every 30 day and report all places where he or she sleeps, eats, works, frequents, and engages in leisure activities]; Illinois § 730 ILCS 150/6 [requiring an offender who lacks fixed residence to report weekly to law enforcement where offender is located]; Washington Rev. Code 9A.44.130[1][a] [offenders must register whether or not they have fixed residence]), the New York legislature may provide specific guidelines to be followed for people in defendant's position who have no address to report.[FN3] It is uniquely within the legislative province to develop registration requirements that will apply to sex offenders who are homeless and without a specific address to report to the pertinent authorities. We simply hold that the change of address registration statute cannot be constitutionally applied to a homeless sex offender under the facts of this case.
Finally, as a result of this Court's dismissal of the charge of failure to verify address information, defendant's plea to criminal possession in the third degree must be vacated. "[W]hen a guilty plea is induced by the court's explicit promise that the defendant will receive a lesser sentence to run concurrently with a sentence in another case, and [the other] conviction is overturned, the defendant may withdraw his plea and face the indictment, since the promise cannot be kept" (People v Pichardo, 1 NY3d 126, 129 [2003]; see also People v Rowland, 8 NY3d 342, 345 [2007]). Here, defendant pleaded guilty to criminal possession of a weapon in the third degree with the promise that his sentence thereon would run concurrently with the sentence on the charge of failure to verify address information. Inasmuch as "we cannot say that defendant would have . . . pleaded guilty to the [criminal possession of a weapon in the third-degree charge] . . . had it not been for the . . . [charge of failure to verify address information], which [we] now [dismiss]," his plea to this charge must be vacated (People [*6]v Pichardo, 1 NY3d at 130; see also People v Rowland, 8 NY3d at 345).
Accordingly, the judgment of the Supreme Court, New York County (Curtis J. Farber, J.), rendered January 31, 2019, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and failure to verify address information, and sentencing him, as a second felony offender, to concurrent terms of two to four and one to three years, respectively, should be reversed, as matter of discretion in the interest of justice, the charge of failure to verify address information dismissed, the plea to criminal possession of a weapon in the third degree vacated, and the matter remanded for further proceedings.
Judgment, Supreme Court, New York County (Curtis J. Farber, J.), rendered January 31, 2019, reversed, as matter of discretion in the interest of justice, the charge of failure to verify address information dismissed, the plea to criminal possession of a weapon in the third degree vacated, and the matter remanded for further proceedings.
Opinion by Renwick, J. All concur.
Renwick, J.P., Kern, Kennedy, Mendez, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 2, 2023

Footnotes

Footnote 1: Correction Law § 168-f(3) provides, in pertinent part, "such sex offender . . . having been given a level three designation must personally verify his or her address with the local law enforcement agency every ninety calendar days after the date of release or commencement of parole or post-release supervision, or probation, or release on payment of a fine, conditional discharge or unconditional discharge."

Footnote 2: The Office of the Attorney General informed this Court that it "did not intend to file a brief in this matter in view of the fact that the District Attorney's brief has provided a comprehensive defense of the statute's constitutionality.

Footnote 3: In fact, one New York State Assembly bill introduced in January of 2022 (and in previous sessions) seeks to add to Correction Law § 168 the term "Homeless sex offender," defined as a sex offender that lacks a registrable residence (An Act to Amend the Correction Law, In Relation to Facilitating Compliance with the Sex Offender Registry for Offenders without a Registerable Residence, NYS Assem., A3858 [2020], available at https://bit.ly/3sFBqse [last accessed on January 20, 2023]).